**Vivian Lois SMITH, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant.**

No. MO–00–CA–038.

United States District Court,
W.D. Texas,
Midland–Odessa Division.

March 28, 2001.

Carl Weisbrod, Morgan & Weisbrod, Dallas, TX, for plaintiff.

Robert Shaw-Meadow, U.S. Attorney's Office, San Antonio, TX, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FURGESON, District Judge.

Before the Court are the Plaintiff's Motion for Summary Judgment and Memo-

randum of Law in Support of Motion for Summary Judgment, filed on August 15, 2000. The Defendant Commissioner filed a Motion for Summary Judgment and Incorporated Memorandum in Support Thereof on November 1, 2000. On November 22, 2000, the Plaintiff filed a "Reply" (it should have been entitled "Response") to the Defendant's Motion for Summary Judgment. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Plaintiff's Motion for Summary Judgment should be GRANTED and the Defendant's Motion for Summary Judgment should be DENIED.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

On February 7, 1996, the Plaintiff filed a claim for disability insurance benefits and supplemental security income benefits with the Social Security Administration. She alleged a date of disability onset of December 1, 1993. The Plaintiff's application was denied initially and upon reconsideration, and she thus requested review by an Administrative Law Judge (ALJ). On February 13, 1997, the ALJ held a hearing at which the Plaintiff and a vocational expert testified. The ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act in a decision dated February 13, 1997, the same day as the hearing; it appears from the record, however, that the decision may not have been actually released until March 6, 1997. (R. at 28.) The Plaintiff then filed a request for review by the Appeals Council on April 26, 1997. Although she submitted new evidence to the Council, it denied her request for review on February 22, 2000. The Plaintiff then brought the instant action in federal court.

With regard to the Plaintiff's substantive disability claims, she alleges that she has been unable to work since December 1, 1993 because of arthritis and degenerative disc disease that causes pain in her back, knees, and hands. In the ALJ's decision denying disability benefits, he found that "[t]he medical evidence supports a finding that Ms. Smith has osteoarthritis in her hands and legs, adhesive capsulitis in her right shoulder, high blood pressure, and degenerative disc disease of the cervical spine." (R. at 34.) At the time of the ALJ's ruling, the Plaintiff was 60 years old and had a tenth grade education plus a G.E.D. She had past relevant work experience as a service representative/rack jobber for a handling company that sold paperback books to discount stores.

## STANDARD OF REVIEW

■ Judicial review of the Commissioner's decision to deny benefits is limited to determining whether (1) substantial evidence supported the decision, and (2) the proper legal standards were used to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999). Substantial evidence is defined as more than a scintilla, but less than a preponderance, of relevant evidence that a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard, a court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000). Thus, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.*

## DISCUSSION

■ Although the Plaintiff has presented several complaints with regard to the

proceedings below, in essence she asserts that the ALJ's decision was not supported by substantial evidence and that improper legal standards were employed in reaching that decision. The Defendant Commissioner, on the other hand, contends that the ALJ's decision was supported by substantial evidence in the record and that the proper legal standards were employed. While the Court agrees with the Plaintiff's overall contention that the case should be remanded, it does so for the particular reason discussed below.

In the Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, she argues that the ALJ applied the wrong legal standard in denying benefits on the basis that the Plaintiff had acquired work skills that were transferable to a job as a telemarketer/telephone solicitor. Rather, the Plaintiff contends, because of her age, the ALJ was required by law existing at the time of his decision to first find that the Plaintiff's skills were "highly marketable" before concluding that she was not disabled within the meaning of the Social Security Act. The Plaintiff turned 60 nine days after the ALJ hearing, but before the decision was issued. (R. at 15.) The Plaintiff presented this question of the proper legal standard to the Appeals Council, but it denied her request for review. (R. at 14–16.) Because the Plaintiff raised the issue before the Appeals Council, there is no exhaustion problem in this case. *See McQueen v. Apfel*, 168 F.3d 152 (5th Cir.1999).

In 1997, when the ALJ issued his decision, the Commissioner's regulations required that if an individual was between age 60 and 64, had a severe impairment, and was limited to light or sedentary work, then the individual would be considered disabled unless she had acquired skills that were "highly marketable." *See* 20 C.F.R. § 404.1563(d), *amended by* 20 C.F.R. § 404.1563(e) (2000); 20 C.F.R. § 416.963(d), *amended by* 20 C.F.R. § 416.963(e) (2000). Instead of applying this legal standard, however, the ALJ reached a finding of not disabled based on a determination that "[t]he claimant has jobs skills [sic] that are readily transferable to other occupations (i.e., working with customer service, inventory control, and customer order taking), and it is *vocationally feasible* for the claimant to make an adjustment to other work in terms of work tools, work processes, work settings, and industry." (R. at 41.) (emphasis added) He also specifically found that "[t]he claimant is 60 years old, an 'individual closely approaching retirement age, 60–64.'" (R. at 41.)

On April 6, 2000, three days after this action was commenced in federal court, the Social Security Administration (SSA) issued its Final Rules pertaining to Clarification of "Age" as a Vocational Factor. *See* Def.'s Mot. Summ. J. Ex. B at 1. The SSA summarized the contents of the rules revisions as follows:

> We are revising the Social Security and Supplemental Security Income (SSI) disability regulations to clarify our consideration of "age" as a vocational factor at the last step of our sequential evaluation process for determining whether an individual is disabled under title II or title XVI of the Social Security Act (the Act). We are also amending our rules to better explain how we consider transferability of skills for individuals who are of "advanced age" (age 55 or older) in deciding whether such individuals can make an adjustment to other work.

*Id.* The revised rules were explicitly given an effective date of approximately 30 days later, or May 8, 2000. *See* Def.'s Mot. Summ. J. Ex. B at 1.

The Final Rules revised 20 C.F.R. § 404.1568 and 20 C.F.R. § 416.968 by

adding to each a new paragraph (d)(4) which reads in part:

If you are closely approaching retirement age (age 60–64) and you have a severe impairment(s) that limits you to no more than *light* work, we will find that you have skills that are transferable to skilled or semi-skilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.[1]

Def.'s Mot. Summ. J. Ex. B at 21, 23 (emphasis added). In this case, the ALJ found that the Plaintiff's combination of impairments was severe (R. at 40) and that she retained the residual functional capacity to perform a wide range of sedentary work (R. at 41). As such, the portions of revised §§ 404.1568 and 416.968 quoted above would not apply to the Plaintiff here; however, the revised standard would essentially be the same under another part of the same subsections:

If you are of advanced age [55 or older] and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

In *McQueen v. Apfel,* 168 F.3d 152 (5th Cir.1999), the Fifth Circuit reversed an ALJ's finding that, although the plaintiff had a severe impairment and could not perform his past relevant work, his work skills were readily transferable to jobs within his vocational profile. The Appeals Council upheld the ALJ's conclusion, and the plaintiff filed a complaint in federal court. *Id.* at 154. As in this case, the plaintiff in *McQueen* turned 60 between the dates of the administrative hearing and the rendering of the ALJ's decision. *Id.* On appeal to the Fifth Circuit, McQueen contended that the ALJ improperly found him not disabled on the basis of "readily transferable" skills, not "highly marketable" skills. *Id.* at 155. The court concluded that, as a matter of first impression in the Fifth Circuit, "the failure to make a specific finding on high marketability [for a 60 to 64 year old claimant] renders the Commission's decision [to deny disability benefits] unsupported by substantial evidence." *Id.* Therefore, because the plaintiff turned 60 while the ALJ's decision was pending, the court held that the ALJ's ruling could not stand with respect to disability benefits denied McQueen after his 60th birthday. *Id.* at 156.

The only difference between this case and *McQueen* is that the social security regulations at issue in both had not been revised at the time that *McQueen* was decided.[2] In contrast, the applicable regulations were revised, issued, and became effective during the pendency of this litigation. The question thus becomes whether the revised regulations are retroactively applicable to the Plaintiff's claim for disability benefits. The Plaintiff argues that the ALJ should have applied the "highly marketable" standard to her disability claim because that was the language of the

---

1. Amended §§ 404.1563(e) and 416.963(e) refer to amended §§ 404.1568(d)(4) and 416.968(d)(4), respectively.

2. *McQueen* was decided on February 17, 1999, more than a year before the Appeals Council's final denial of the Plaintiff's request for review in this case. In fact, the SSA had issued an Acquiescence Ruling in 1999 acknowledging and responding to the Fifth Circuit's decision in *McQueen*. See the discussion that follows.

regulations as they existed in 1997. The Defendant contends that the revised regulations apply retroactively to the Plaintiff's case and mirror the standard the ALJ actually used. Therefore, the Defendant reasons, any error committed by the ALJ was essentially harmless. The Court finds the Defendant's argument to be without merit.

As explained by the Supreme Court, "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (citations omitted); *see also Sierra Med. Center v. Sullivan*, 902 F.2d 388, 392 (5th Cir.1990) (finding that nothing in an amended Medicare regulation mandated its retroactive application). Thus, in *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999), the Fifth Circuit held that the retroactive application of the Contract with America Advancement Act (which prohibited a person from being considered disabled for social security purposes if alcohol or drug addiction was a material contributing factor to the person's disability) did not violate due process because Congressional intent with respect to retroactivity was expressly manifested in the legislative record. An even more recent example from the Fifth Circuit provides further proof for the proposition that revisions and amendments to the social security regulations must be explicitly made retroactive. In *Boyd v. Apfel*, 239 F.3d 698 (5th Cir.2001), the court of appeals stated in a footnote:

> Since Boyd's hearing, C.F.R. § 404.1520a has been revised and amended. The revisions and amendments became effective on September 20, 2000. 65 Fed.Reg. 50,746 (August 21, 2000). The citations in this paragraph [*i.e.*, the text accompanying the

> footnote] are to the regulations as they existed from 1996 through 1998, when Boyd's case was being heard and considered by the ALJ and the Commissioner.

*Id.* at 705 n. 11.

Similarly, the Final Rules issued on April 6, 2000 provide sufficient guidance about retroactivity in this case. First, the rules revision explicitly states that the revisions will be effective May 8, 2000. *See* Def.'s Mot. Summ. J.Ex. B at 1. The prospective effect of the revisions is further implied under a section entitled "Explanation of Revisions," where it is stated that "it must be remembered that these final rules do not go into effect until 30 days after the date of this publication. Therefore, the 'current' rules will still be in effect for another 30 days." Def.'s Mot. Summ. J. Ex. B at 3. Second, language in the Final Rules to the effect that the purpose of the revisions was to "restore national uniformity and to clarify what we have always meant by this rule," is in no way inconsistent with a lack of retroactivity of the rule. Def.'s Mot. Summ. J. Ex. B at 11. Finally, it is telling that the SSA's Notice of Rescission of Social Security Acquiescence Rulings 95–1(6), 99–2(8) and 99–3(5) was also issued on April 6, 2000 and had an effective date of May 8, 2000. *See* Def.'s Mot. Summ. J. Ex. A at 1. One of the Acquiescence Rulings, 99–3(5), was issued to specifically address the holding of *McQueen v. Apfel*, as discussed above.

## CONCLUSION

As in *McQueen*, the Court finds that the ALJ did not properly consider whether the Plaintiff possesses highly marketable skills. Accordingly, on remand the ALJ must specifically consider this question in light of the entire record and possibly with the help of a vocational expert. Moreover, the highly marketable skills independent

determination must be made with reference to the standards used in 1997, not the standards subsequently explicated by the Social Security Administration to "clarify what we have always meant by this rule." Accordingly,

It is ORDERED that the Plaintiff's Motion for Summary Judgment is GRANTED.

It is ORDERED that the Defendant's Motion for Summary Judgment is DENIED.

It is hereby further ORDERED that this case is REMANDED for further administrative proceedings not inconsistent with this opinion.